EDWARD C. POLAND *vs.* SIMEON BROWNELL.

Suffolk.   Nov. 9, 1880. — April 8, 1881.   LORD, SOULE & FIELD, JJ., absent.

A buyer of an interest in a stock of goods and in a business, who has ample opportunity afforded him to examine the goods and the books of the business, has no right to rely upon representations of the seller concerning the value of the goods or of the amount of business which the seller has previously done.

No exception lies to the exclusion of evidence relating to the measure of damages, if the plaintiff is not entitled to maintain his action.

TORT for deceit in the sale of a half interest in a stock of goods and business.  Answer, a general denial.  Trial in the Superior Court, before *Aldrich*, J., who directed a verdict for the defendant, and reported the case for the determination of this court, in substance as follows :

The plaintiff, who was the only witness in the case, testified that he lived in Lynn ; that he had been a bookkeeper fifteen years ; that on or about January 1, 1879, he advertised in the papers for an interest in some business, and the defendant answered this advertisement; that he first saw the defendant, about January 10, 1879, at the defendant's shop in Boston ; that the defendant told him that he came to Boston from Cambridge, New York; that he had been president of a life insurance company; that he had traded for his interest in this stock of goods ; that he knew but little about the business and that he wanted to sell his interest in the stock, because he wanted to organize a corporation to go into the business of quarrying stone, and that he wanted to give his whole attention to that and his other business ; that the plaintiff told the defendant he would look over the goods and see what he thought of them ; that the defendant then conducted him over the store, pointed

out the goods, and said they were mostly new, of good pattern, of recent and the best manufacture, and very salable; and added. " There are three of us here, and we have been getting a good living, and I think you can do well; " that he saw the defendant ten or twelve times in all; that the defendant told him that he had not given particular attention to this business, and introduced the plaintiff to his, the defendant's, son Frank, and said he could rely on anything Frank told him; that Frank told him the sales had been about $2500 per month, and that the profits had been from twenty-five to fifty per cent; that the defendant told him he knew nothing about the books, that Frank kept them; that Frank showed him the books; that the cash book added up about $700 per month; that he added up the blotter and ledger, and that the cash sales and the entries on the blotter and ledger amounted to about $2500 per month; that Frank told him that only a part of the sales was entered on the cash book and the rest on the blotter and ledger; also that, after his purchase, the pages of the cash book from January 17 to February 1, 1879, were torn out by Frank without the plaintiff's knowledge or consent, but the plaintiff had previously examined them and knew their contents; that Frank told him the sales were light, but that he thought they would have good sales in the spring, when building commenced; that he afterwards told the defendant that he was unable to find any one who knew about the goods; that $3500 was all the money he had; that he had never been engaged in business, and must rely entirely on the defendant's representations; that the defendant said he would treat him as one of his own sons, and that he would not cheat him out of a dollar, and would guarantee he should not lose by the purchase; that the plaintiff got one Nickerson, a neighbor of his, whom he knew slightly, and who was a stranger to the defendant, to come and examine the stock and help him make the trade with the defendant; that the plaintiff took Nickerson to the store two or three times, and employed him to write the bill of sale and the note, and paid him for it; that with Nickerson's advice he got a discount of $600 from the price asked by the defendant for the shop fixtures, and ten per cent from the price asked for the chandeliers and gas fixtures; that the defendant told him that he and his

son traded with Edward F. Childs for this stock of goods; that Childs was the successor of Childs, Fuller & Company, who had been in this business for a number of years; that Childs was at the shop all the time he was making the trade with the defendant; that Childs had desk room in the shop, but the plaintiff did not know Childs at that time, and was not intro duced to him; that the defendant told the plaintiff that the chandeliers were manufactured by Carlton, or by Page & Lowe, his successors, and that the defendant and his son were the sole agents for the sale of these goods in Boston; that something was said about introducing another " line " of kitchen goods; that the defendant proposed to him to put in $500, and his portion, $500, for that purpose; that he was allowed to examine the books before the purchase; that he spent all the time he wanted to in their examination; that he was told he could take the books home with him for examination, and that he did take home one of the books, but could not make anything out of them; that he had all the access to the books he wanted; that several days elapsed between the time he first saw the defendant and the conclusion of his trade with him. It appeared that all the goods which were included in the plaintiff's purchase were openly exposed and capable of being fully examined by the plaintiff before he made the purchase. The plaintiff also testified that he believed the representations of the defendant and his son, and that he gave the defendant $3500 in cash, and a note for $823.40 to be paid in one year, if the business paid the plaintiff $1000 in one year.

A bill of sale, dated February 1, 1879, from the defendant to the plaintiff, was put in evidence. The plaintiff testified that the chandeliers were not new; that the manufacturer had been dead two years; that the patterns were not good ones, and were not very salable; that the goods were valued, for the purpose of the sale, at about $8500, of which about $6500 in value was in chandeliers and gas fixtures, about $1500 in shop fixtures, and the balance in kerosene goods; that he continued in the business from Febuary 1, 1879, to June 19, 1879; that the sales for this time averaged about $700 per month; that the profits were not more than from $50 to $100 per month; that the business was not profitable; that he was obliged to put in

other money to pay the running expenses; that they did not sell enough to pay the running expenses; that the stock, by consent of parties, was sold by public auction on June 19, 1879.

The plaintiff testified that the business was worth the price he paid if it had been as represented, but that, in fact, the goods brought all they were worth at the auction sale. He offered to show how much they brought at the sale by auction, but the judge excluded the evidence because they had been dealing with this stock, buying and selling. He then offered to show what the goods were worth when purchased, but the judge excluded the evidence. He also testified that he kept the books after he went into the business; that on his examination of the old books, about three weeks after he bought out the defendant, he found that the sales amounted to about $700 per month from June 1878 to February 1879, and the profits had been from $50 to $100; that after he went into the business he opened a new set of books. During the time the plaintiff continued in the business, Frank, the son of the defendant, was his partner.

There was no evidence that the plaintiff, before the sale of June 19, 1879, ever offered to rescind his contract with the defendant, or to return the goods to the defendant, or made any demand on the defendant for a repayment of the purchase money.

The plaintiff offered no other evidence, and rested his case. The defendant thereupon requested the judge to rule that on the foregoing evidence the plaintiff could not maintain his action. The judge so ruled, and directed a verdict for the defendant. If the ruling was wrong, the verdict was to be set aside and a new trial granted; otherwise, judgment on the verdict.

*H. N. Shepard*, for the plaintiff.

*J. F. Brown*, (*C. R. Train* with him,) for the defendant.

COLT, J. To maintain this action, the plaintiff must prove that he was induced to buy the stock of goods and a share of the business in question by the fraudulent misrepresentation or concealment by the defendant of material facts, and that he suffered damage thereby. He has no cause of action if, having ample opportunity to examine the property, he saw fit to rely upon the statements of the seller concerning the value of the

thing sold. It is everywhere understood that such statements and commendations are to be received with great allowance and distrust. *Brown* v. *Castles*, 11 Cush. 348, 350. *Mooney* v. *Miller*, 102 Mass. 217. *Parker* v. *Moulton*, 114 Mass. 99.

The representations relating to the goods sold were made by the defendant himself. The goods were exposed and fully ex amined by the plaintiff and his friend, who was called in for that purpose before the sale. For all that appears, both buyer and seller had equal means of information and were equally well qualified to judge of the value of the property. The evidence shows that the plaintiff relied on his own examination and the advice of his friend. But what is more decisive, the statements in relation to the goods which were made by the defendant must be deemed to be mere seller's statements, and furnish no ground for an action for damages. *Gordon* v. *Parmelee*, 2 Allen, 212. *Pike* v. *Fay*, 101 Mass. 134. *Parker* v. *Moulton*, 114 Mass. 99.

As to the representation of the defendant, namely, that three of them had been getting a living out of the business, it is sufficient to say that, if it can be deemed a material misstatement of fact, yet there is no evidence tending to show that it was false.

The representations alleged to have been made by the defend ant's son, to whom the plaintiff was referred for information, do not show a cause of action, because it was not found that they were false, or that they were relied on by the plaintiff. He must be presumed to have known the contents of the books before his purchase. He had been a bookkeeper for many years. He had full access to them, and spent all the time he desired to in their examination. He was not excused from making examination of the books, or of the property he was buying, unless he was fraudulently induced to forbear inquiries or examination which he would otherwise have made. And it is well settled that, if fraud of this latter description is relied on as an additional ground of action, it must be specifically set forth in the declaration. *Parker* v. *Moulton*, above cited. *Veasey* v. *Doton*, 3 Allen, 380.

The plaintiff's offer to show what the goods were worth when purchased, and what they afterwards sold for at auction, was

properly excluded, because such evidence could only be material to show the extent of the injury when occasioned by an actionable wrong on the part of the defendant.

*Judgment on the verdict.*