## STEWART *v.* STEARNS.

False and fraudulent representations, calculated and intended to mislead, and prevent examination and inquiry as to the quality and character of a stock of goods, made by a vendor to a purchaser unacquainted with such goods, who, exercising ordinary prudence, is induced to make the purchase, relying upon the representations as true, and is thereby deceived, are actionable.

The rule *caveat emptor* applies ordinarily to cases free from actual fraud where the parties deal upon an equal footing and with equal means of knowledge, and it is not applicable as a general rule when false and fraudulent representations of material facts are made by the vendor, and the parties have not equal facilities for ascertaining the truth.

In such cases the purchaser has the right to rely upon the statements of the vendor; and where the purchaser is justified in relying upon the representations of the vendor, the rule *caveat emptor* does not apply.

Evidence that the plaintiff was induced by the defendant's false representations to forbear making inquiries, which he otherwise would have made, is admissible without being specifically alleged in the declaration.

CASE, for deceit in the sale of a stock of goods. Facts found by a referee. By a writing made January 6, 1880, the defendant agreed to sell his stock of goods in Concord to the plaintiff "for what said goods were worth, or would cost January 1, 1880 * *; that said Stewart may show the prices of each class of goods, as appraised or rated in the first instance by said Stearns, to persons who are acquainted with the value of such goods, and that such persons shall make such changes in the prices carried out by said Stearns as shall correct any mistake made by his estimate, and shall make the price conform to their estimate, and the latter estimate shall be the price which said Stewart shall pay for the same * * *."

Prior to the date of this agreement, the defendant had been in business in said store about fifteen years. The plaintiff had never been in that business, and had no more knowledge of it than men in general. Immediately after making said agreement, the parties proceeded to make an inventory of the stock of goods, the defendant, and one Heath, his clerk, calling off the goods, with quantity and price, and Arthur C., son of the plaintiff, entering the same on the book. The plaintiff was present part of the time during the taking of the inventory, but took no active part, though he had an opportunity to examine the goods as much as he pleased. He was not acquainted with the prices of the different classes of the goods, but allowed the defendant and Heath to fix the prices. The prices fixed by the defendant and Heath and put upon the inventory were the same prices for which new goods of the same grade, pattern, design, fashion, and style could be bought January 1, 1880. At the time the parties began to talk of the trade, the defendant knew that the plaintiff was unacquainted with such goods as made up the stock in his store; and the defendant, both before the making of the written agreement and during the taking of the inventory, did represent and state to the plaintiff, in substance, that his stock was clean and desirable, and that the goods were of good styles and salable. Relying upon the representations of the defendant, the

plaintiff did not make a careful examination of the goods, and did not avail himself of the means provided in the written agreement for fixing the prices of the goods. In the course of his business during the spring and summer of 1880, in selling the goods bought of the defendant, the plaintiff first learned that the goods were not such as the defendant had represented them to be, and that the prices paid exceeded the fair value at the time of the trade, and first made complaint to the defendant in June, 1880, but did not then or at any time call in the referees named in the agreement to revise and correct the prices fixed in the inventory.

The total price paid by the plaintiff for the stock exceeded the fair value of the same at the time of the sale in the sum of $677.20.

Before the above sale the plaintiff had been a farmer, and had never been in the business of buying and selling carpets and papers, and had no more knowledge of that business than men in general, and was not acquainted with the prices of the different classes of goods. The defendant objecting, the plaintiff was allowed to testify as to what was a fair price for the carpets and papers at the time of the trade.

In ruling in this testimony of the plaintiff, the referee found that at the time of the trial the plaintiff had sufficient knowledge to qualify him to testify, and held that it was immaterial whether such knowledge was acquired before or after the trade for the goods.

Counsel for the defendant claimed that under the written agreement the plaintiff was to pay the prices of new goods of the same grade, pattern, design, fashion, and style of this stock, instead of the actual value of the stock as it existed at the time of the sale; that the rule *caveat emptor* should be applied; and that if the plaintiff was dissatisfied with the prices fixed, he was bound to call in the referees named in the written agreement to correct such prices. Upon these matters of law the referee ruled against the defendant.

*Ray & Walker* and *W. L. Foster*, for the plaintiff. While there may be no doubt on authority that the purchaser assumes the risk as to the quality of the article sold, in cases where the seller does nothing and says nothing to mislead him, and while there may be no doubt that the rule *caveat emptor* would be enforced in cases where the seller was influenced by no base or corrupt motive in making representations which turned out to be untrue, but which he supposed were true, yet the present case is clearly distinguishable from those, in that it contains the element of active, intentional fraud. Stearns did not remain silent: he induced Stewart to rely on his statements as to the quality of his goods, and at the same time knew they were false, intending thereby to deceive and defraud the plaintiff.

Was the plaintiff guilty of want of ordinary care? It is argued that he had an opportunity to examine the goods as much as he

pleased. Very true: but of what avail would an examination have been to him? He had for a long time been a farmer, and had no more knowledge of such goods then than men in general; and we submit that after such a pretended examination he would have had no better idea in regard to the styles, fashions, and qualities of the different grades of carpets and papers, than he had before he entered the store. And moreover, relying on the representations of Stearns, he was led to omit other means of information which he might, but for those representations, have resorted to. But this is really a question of fact, already settled by the referee against the defendant.

It is claimed that the misrepresentations complained of were merely expressions of opinion, and so immaterial. The exact words used are not reported in the case, but only the substance of them is given. It should also be borne in mind, that by the trade the plaintiff was to pay the actual present worth of these particular goods, and not of any other goods. The fraud consisted in the false representations on which the plaintiff relied; in the circumstances of the transaction, including the superior knowledge of the defendant in regard to the quality of carpets and papers, and the want of such knowledge on the part of the plaintiff, which was well known to the defendant; and in the fact that the defendant, having agreed to put prices on the goods corresponding with the actual present worth of the same, did put on them, without the plaintiff's knowledge, prices corresponding not with the actual present worth of these goods, but with the present worth of other and better goods, or goods of the same quality as he represented these to be. Whether the representations in regard to the quality and market value of the goods under the circumstances were mere expressions of opinion or commendation, or whether they amounted to a warranty in law, is a question of fact already passed upon by the referee, and settled in favor of the plaintiff. *Whitney* v. *Sutton*, 10 Wend. 411; *Cook* v. *Moseley*, 13 Wend. 277; *Foster* v. *Caldwell*, 18 Vt. 176; *Coolidge* v. *Brigham*, 1 Met. 552; *Morrill* v. *Wallace*, 9 N. H. 111; *Simar* v. *Canaday*, 53 N. Y. 298. Whether the representations were such as to put common prudence off its guard, and whether the buyer had equal means of knowledge with the seller as to the thing sold, and whether the buyer used common prudence in conducting the trade, were all questions of fact involved in the principal question, and settled by the report of the referee. *Bean* v. *Herrick*, 12 Me. 262; *Vernon* v. *Keys*, 12 East 632; *Lawton* v. *Kittredge*, 30 N. H. 500; Big. Fr. 18; Kerr Fr. 86.

But even in cases where the expressions used amount to mere opinion only as to the quality of the article in question, it does not follow that the vendee cannot rely upon them, and have his remedy if they are false. Cooley (Torts 484) says,—"There are some cases, however, in which even a false assertion of opinion will amount to a fraud, the reason being that under the circumstances of

the case the other party has a right to rely upon it without bringing his own judgment to bear. Such is the case where one is buying goods the value of which can only be known to experts, and is relying on the vendor, who is a dealer in such goods, to give him accurate information concerning them." *Faribault* v. *Sater,* 13 Min. 223; *Picard* v. *McCormick,* 11 Mich. 68; *Kost* v. *Bender,* 25 Mich. 515; *Pike* v. *Fay,* 101 Mass. 134; *Allen* v. *Hart,* 72 Ill. 104; *Ladd* v. *Rice,* 57 N. H. 374; *Wise* v. *Fuller,* 29 N. J. Eq. 257; *Jones* v. *George,* 14 Cent. L. J. 318; *Winkler* v. *Patten,* 57 Wis. 405; Big. Fr. 26.

It is claimed that if the plaintiff was dissatisfied with the prices fixed, he was bound to call in the referees named in the written agreement. But it is to be observed that he was not dissatisfied with the prices when the trade was completed and the money paid. Nor was the calling in of the referees a condition precedent. The agreement was, that " said Stewart may refer all prices," etc. By the false and fraudulent representations of Stearns, he believed the goods were merchantable at the prices put upon them, and so had no occasion to resort to the referees.

*J. Y. Mugridge* and *Chase & Streeter,* for the defendant. The liability of the defendant has not been absolutely fixed by the referee, but is made to depend, by the report, upon the opinion of the court on the facts stated therein.

The property sold, as to which the alleged deceit was practised, was a stock of carpets, room paper, crockery, glass ware, &c., and was so located at the time of the sale that each and every article of it could have been critically examined, as to quantity, quality, pattern, style. &c.

The plaintiff was present when the stock was taken, a part of the time, and could have been all of the time if he had chosen, and had an opportunity to examine the goods as much as he pleased.

Referees agreed upon, to whom disagreements as to prices were to be submitted, were at hand, to be called if the plaintiff desired.

These were the ways and methods agreed to by the defendant for the transaction of the business; and the fact that they were so agreed to by him, and that they were carried out in taking the stock, most effectually contradicts the idea that anything fraudulent, as against the plaintiff, was contemplated or practised by the defendant in the trade.

If the means of knowledge be directly at hand and equally available to both parties, the plaintiff, as a prudent man, must be deemed to have availed himself of such means. and hence has not been deceived by the defendant, so that (unless there was a warranty by the defendant) an action of deceit cannot be maintained against him. Big. Torts 25; *Ely* v. *Stewart,* 2 Md. 40ⁿ; *Company* v. *Adams,* 23 Pick. 256; *Brown* v. *Leach,* 107 Mass. 364; *Buck* v. *M'Caughtry,* 5 T. B. Mon. 221; *Laidlaw* v. *Organ,* 2 Wheat. 178;

*Bench* v. *Sheldon*, 14 Barb. 66; *Deming* v. *Foster*, 42 N. H. 165; *Barnard* v. *Kellogg*, 10 Wall. 383.

The mere fact that the examination may be attended with inconvenience is not sufficient to dispense with the rule. *Taymon* v. *Mitchell*, 1 Md. Ch. 496; *Carley* v. *Wilkins*, 6 Barb. 557.

We contend that these well understood rules of law have a direct and controlling application to this case. None of the property sold was in any way concealed from the plaintiff; it was all before his eyes; he had the fullest opportunity to examine all of it, as to quantity, style, and pattern, aided by his son, the referees, or in any way he might choose, and there is no pretence that, so far as this investigation or any discovery attending it was concerned, he was restrained, impeded, or in any manner prevented by the defendant. A deceit upon the plaintiff under these circumstances was, we respectfully submit, an impossibility in law and in fact.

The report of the referee contains no suggestion of any device to put the plaintiff off his guard, or any resort to trick or artifice to take advantage of him or prevent his examination of the stock; and nothing of this kind can be presumed from the circumstances attending the sale, but, on the contrary, every possible facility for the most thorough inspection of the property was willingly afforded him by the defendant.

Fraud is not established unless there is proof that the defendant knew the representation to be false. "The law raises no presumption of knowledge from the single fact *per se* that the representation is false. There must be something further to establish the defendant's knowledge." Big. Torts 18; *McDonald* v. *Trafton*, 15 Me. 225; *Barnett* v. *Stanton*, 2 Ala. 181; *Baldwin* v. *Buckland*, 11 Mich. 389.

The only representations made by the defendant as to the stock of goods were, " in substance, that his stock was clean and desirable, and that the goods were of good style and salable."

These were mere mords of praise, commendation, and opinion as to his stock, and were intended only as such, and such representations he was at liberty to make. *Anderson* v. *Hill*, 12 Smed. & M. 679; *Bishop* v. *Small*, 63 Me. 12; *Long* v. *Woodman*, 58 Me. 49; Cool. Torts 483, n. 3.

Nor were these statements as to matters of such peculiar character as that their truth could have been known only to himself.

There is no finding of any fraudulent intent on the part of the defendant as to anything he said or did in connection with the trade, and there is nothing in the case which intimates that these affirmations of the defendant as to the stock were not honestly entertained and expressed by him; and an honest statement of fact, believed by a party at the time it is made, though made to be acted on, and under such circumstances as would warrant a prudent man in acting on it, will not, if it should turn out to be false, fix a liability upon a defendant on account of it. *Mahurin* v. *Harding*,

28 N. H. 128; *Case* v. *Boughton*, 11 Wend. 106; *Haycraft* v. *Creasy*, 2 East 92; *Collins* v. *Evans*, 5 Ad. & E. (N. S.) 820.

CLARK J.   The finding of the referee is authorized by the facts appearing in the case.   If the defendant made false and fraudulent representations upon material matters, calculated and intended to mislead and prevent examination and inquiry as to the quality and character of the stock of goods, to induce the plaintiff to make the trade, and the plaintiff, in the exercise of ordinary prudence, relying upon such representations as true, was induced to enter into the contract and was thereby defrauded, he is entitled to damages.

Upon competent evidence the referee has found that the defendant, knowing that the plaintiff was unacquainted with such goods as made up the stock in his store, both before the making of the written agreement and during the taking of the inventory, represented and stated to the plaintiff, in substance, that his stock was clean and desirable, and that the goods were of good styles and salable; that the plaintiff, relying upon the defendant's representations, did not make a careful examination of the goods, and did not avail himself of the means provided in the written agreement for fixing the prices of the goods; that the stock contained remnants of carpets, and both carpets and papers of old patterns and styles, which were not salable at the prices put upon them in the inventory, and nothing was said by the defendant to the plaintiff about this; and that the plaintiff relied upon the representations made by the defendant, and was deceived by them and by the suppression of facts relating to the stock.   It is also to be assumed, from the finding of the referee for the plaintiff, that the defendant knew the representations were false, that they were made as statements of material facts to deceive the plaintiff and were not mere expressions of opinion, and that the plaintiff was justified in relying upon them.   These questions of fact are included in the general finding.   *Noyes* v. *Patrick*, 58 N. H., 618.   If the representations were false, the defendant knew them to be so, and the conclusion is almost irresistible that they were made with intent to deceive and defraud.   Benj. Sales, *s.* 460.

It is objected that the plaintiff was not justified in relying upon the representations of the defendant, and that the referee erred in holding that the rule *caveat emptor* did not apply to this case.   If the rule was of universal application, an action of deceit for false representations in a sale could never be maintained by the purchaser.   It may be difficult to draw the line which separates cases within the rule from those to which it does not apply, as each case depends to some extent upon its peculiar circumstances; but it applies generally to cases free from actual fraud, where the parties deal upon an equal footing and with equal means of knowledge; and it is not applicable, as a general rule, where false and fraudulent representations of material facts are made by the vendor, and

the parties have not equal facilities for ascertaining the truth. In such cases the purchaser has the right to rely upon the statements of the vendor ; and when the purchaser is justified in relying upon the representations of the vendor, the rule *caveat emptor* does not apply.

Where the statements are of material facts, essentially connected with the substance of the transaction, and not mere general commendations or expressions of opinion, and are concerning matters which from their nature or situation are peculiarly within the knowledge of the vendor, the purchaser is justified in relying on them ; and in the absence of any knowledge of his own, or of any facts which should excite suspicion, he is not bound to make inquiries and examine for himself. Under such circumstances it does not lie in the mouth of the vendor to complain that the vendee took him at his word. On the other hand, where the representations consist of general commendations or mere expressions of opinion, or where they relate to matters not peculiarly within the knowledge of the vendor, the purchaser is not justified in relying upon them, but is bound to examine for himself so as to ascertain the truth. 2 Pom. Eq. Juris., *ss.* 891, 892. In this case the parties were not on an equal footing, and had not equal means of knowledge. The defendant had an experience of fifteen years in trade, and knew the exact condition of his stock. The plaintiff had no acquaintance with such goods, and could learn nothing of their style and quality from an examination. The defects in the goods were to him undiscoverable defects. The representations made by the defendant related to material matters of fact, and the plaintiff was justified in relying on them. He was not guilty of negligence in assuming them to be true, nor was it his duty to employ a competent person to examine the goods.

In *Poland* v. *Brownell*, 131 Mass. 138, cited by the defendant in argument as a case strongly resembling the case at bar, it is stated in the opinion of the court " that the evidence showed that the plaintiff relied on his own examination and the advice of a friend, and for all that appeared both buyer and seller had equal means of information, and were equally well qualified to judge of the value of the property."

The evidence that the plaintiff's vigilance was disarmed by the defendant's representations was admissible under the declaration. It is a necessary consequence of such representations to lull suspicion and prevent inquiry and examination, which is not required to be specially alleged. It is not necessary to make a special claim for damages which result naturally and necessarily from the fraud. 1 Ch. Pl. 395 ; 3 Suth. Dam. 426 ; *Hoitt* v. *Holcomb*, 23 N. H. 535, 552 ; *Hoitt* v. *Holcomb*, 32 N. H. 185, 205 ; *Page* v. *Parker*, 40 N. H. 47, 71. *Poland* v. *Brownell*, 131 Mass. 138, and *Parker* v. *Moulton*, 114 Mass. 99, cited by the defendant, are to the effect that where the representations are not in themselves actionable, and the

fact that the plaintiff was fraudulently induced to forego making inquiries which he would have otherwise made is relied on as a distinct ground of action, the means by which he was induced to forbear inquiry must be specifically set forth in the declaration, and it is not sufficient to charge in general terms that the plaintiff was fraudulently prevented by the defendant's artifice from making inquiry.

There was no error of law in allowing the plaintiff to testify as an expert as to what was a fair price for the goods at the time of the trade. Whether he possessed the requisite qualifications was a question of fact to be determined by the referee. *Jones* v. *Tucker*, 41 N. H. 546; *Dole* v. *Johnson*, 50 N. H. 452. The plaintiff went into business as soon as he bought the goods. There is no evidence or legal presumption of a material fall in the price of such goods after January, 1880. During the spring and summer of 1880, the plaintiff, in the course of his business, learned that the prices he paid the defendant exceeded the value of the goods in January, 1880, and he made complaint to the defendant in June, 1880. The plaintiff's means of information as to their value began in January, 1880. The knowledge gained by him in business within six months after he bought the goods of the defendant came from sources which the referee found were not too remote in time to be considered. The objection, that the plaintiff's knowledge of the prices of goods in January, 1880, must have been mere hearsay, is not sustained.

It is objected that the plaintiff's sole remedy was provided by the contract, by the stipulation for a reference of all prices named on the stock by the defendant to the judgment of certain persons designated in the written agreement. That was one remedy,—but the contract did not exclude the plaintiff from the remedy of this action ; and the same fraud that induced him to buy the goods, induced him to refrain from the remedy provided by the contract.

*Judgment for the plaintiff on the report.*

ALLEN and BLODGETT, JJ., did not sit; the others concurred.