Garrison *v.* Technic Electrical Works.

FRANK LINWOOD GARRISON

*v.*

TECHNIC ELECTRICAL WORKS et al.

[Filed February 10th, 1900.]

1. The burden is upon the vendee, who seeks to rescind a sale for fraudulent misrepresentations, to prove the making of the representations which he alleges, and which the vendors deny, and that they were false.

2. Where an admitted written statement is set up as the representation, and its falsity is sought to be proven by other proof, the burden is still upon the complainant to prove that the written memorandum is false in fact.

3. It is only when the vendee has proven that there have been false representations made, that the burden shifts and the vendor is called upon to show that they did not influence the purchase.

4. The affording to the vendee a full and unrestricted opportunity to examine into the subject-matter of the sale, is evidence of good faith on the part of the vendor.

5. When a false representation is alleged, which is of so trivial a character that it cannot be believed to have affected the vendee's judgment, it furnishes no ground on which to rescind the sale.

On bill, answer and proofs.

The bill in this case is filed by the complainant, declaring, so far as its allegations are well pleaded, that the complainant was induced by false representations to purchase shares of stock of the defendant company, which he tenders himself ready to return, and praying that the defendants who made the false statements, or knowingly accepted the benefit of them, may be decreed to return the price so fraudulently obtained.

The bill was demurred to, and held to be a sufficient pleading, taking it to be true, to entitle the complainant to relief. See *Garrison* v. *Technic Electrical Works, &c., 10 Dick. Ch. Rep. 708.* The defendants have answered the bill, denying all its allegations of fraudulent representations, and the cause has been heard upon the merits. These allegations of fraudulent repre-

sentations inducing the purchase by the complainant of the stock of the company are recited in the discussion of the second ground of demurrer.  *10 Dick. Ch. Rep. 715.*

The defendant Zimmele was the president, and the defendant Sinclair the secretary and treasurer of the defendant company. It is complained that Sinclair requested the complainant to purchase shares of the company's stock, and that during the negotiations both Sinclair and Zimmele stated that the collective assets of the company were in excess of its liabilities, taking capital stock to be a liability; that the receipt from sales of its products were in excess of its expenditures, and that it was then doing a profitable business. The bill further alleges that the defendants gave to complainant a written memorandum, pledging their word that the assets and liabilities of the company, stated in a trial-balance sheet of February 1st, 1896, submitted to the complainant, and that all their verbal statements as to the solvency, credit and condition of the company, were correct and true. The bill asserts that these representations induced the complainant to purchase the stock; that shortly after he was elected president of the company, and then discovered that $400 of bills payable had been omitted from the balance sheet; that the inventory of plant and tools had been made more than a year, with no allowance for depreciation; that the bills receivable, which had been represented as collectible to amount of two-thirds value, were in fact less than one-half of them collectible; that for over two years the assets of the company had been insufficient to pay its debts and continue its business; that its expenditures for five months had been in excess of its receipts, and its business for some time had been unprofitable; and that the company had been insolvent for over two months and unable to pay its liabilities without suspending its business.

These allegations charging fraudulent misrepresentations by the defendant are distinctly disputed by the answer. The defendants deny that Sinclair invited the complainant to purchase the stock, and state that the proposition to buy came from the latter. They admit that they represented the company to be solvent, and say that it was in fact solvent, that its collectible

assets exceeded its liabilities. They insist that the receipts from sales were in excess of expenditures, though during certain periods when business was slack the reverse for a time might be true, but they allege that this was stated to the complainant.

They deny that they represented that the company was doing a profitable business at the time of the sale, and allege that in fact the company, at the time the complainant was about to purchase the stock, had just started a new line of manufacture, and that they stated to the complainant their belief that with some small additional capital and proper attention the concern would become prosperous.

On the issues of fact thus joined, the cause came to hearing.

*Mr. James H. Carpenter* and *Mr. Herbert A. Drake,* for the complainant.

*Mr. Edwin Robert Walker* and *Mr. Garret D. W. Vroom,* for the defendants.

GREY, V. C.

All the allegations of fraudulent statement or conduct set out by the complainant as grounds for relief are denied by the answer, either by express averment that the alleged statements were not made, or that if made they were in substance true.

This presentation of the case puts upon the complainant the burden of proving that the defendants made the representations set up in the bill as fraudulent; that the representations were false; that the complainant was thereby deceived and believed them to be true, and thus induced to purchase the stock of the company.

Without elaborately restating the extremely voluminous testimony presented in support or denial of the alleged fraudulent misrepresentations, it is enough to say that taking all the proofs together, they show that the sale of the stock was made under the following circumstances :

The defendants Zimmele and Sinclair were the principal owners of the stock of the defendant company, and were also its

president and secretary and treasurer.  The concern was engaged in the manufacture of electrical appliances, and had the usual experiences of newly started enterprises.  Some of its productions had been profitably sold, some of them at a loss.  At the particuliar time when the complainant came into the company by purchase of the shares, it was about changing the mode of conducting its shop to what was known as the interchangeable plan.  This is a method of making each of the respective parts of its products uniform, so that they might be interchanged.  The introduction of this new plan called for a partial cessation of business and for the expenditure of considerably more money.  These two causes had operated to cut down the extent and the profits of the business.

Upon the opening of the negotiations for the purchase of the stock, the complainant had the freedom both of the workshop and the office of the company.  He was told of the pending improvement by the introduction of the interchangeable method of manufacture and of the need of additional capital for this purpose.  He saw the modes of manufacture, the material and the product, and the books of the concern were thrown open to him.  He testifies that he did not see all of the books, and that he was inexperienced in bookkeeping.  But his own testimony shows that the defendants repeatedly offered all the books and papers of the company for his inspection, and that he did have access to all such as he desired to see, and I am not satisfied that the complainant, a very intelligent man, engaged in an investigation for the express purpose of finding out the condition of a business, did not look at all of the books which were offered him, which afforded the information he sought.  His denials that he saw all the books did not accord with either the probabilities of the case, or with the weight of the other evidence.  It does not appear that the defendants knew the complainant was ignorant of bookkeeping, nor did he in fact, when testifying as to these matters, seem to be so lacking in such knowledge as he asserted himself to be.  No one prevented him from having the aid of an expert if he felt himself incapable of obtaining from the books all the information he desired.  The defendants

also gave him a letter of introduction to the New York sales agent of the company. He went alone to see this agent, to ascertain the prices at which the goods produced could be sold, and he thus obtained all the information he desired as to the extent and character of the sales.

Where the vendor, pending the negotiations for a sale, gives the vendee free access to the books, papers, stock, workshops and business of the company, without selection or restraint of the means or extent of the information, it is an indication that there is no intent to defraud. *Poland* v. *Brownell, 131 Mass. 138 ; Slaughter* v. *Gerson, 13 Wall. 383 ; Atwood* v. *Small, 6 Cl. & F. 232.* If the alleged misrepresentations relate to matters which the complainant himself investigated, it is difficult to believe that the defendants who afforded him the means of unrestricted investigation intended to cheat him, or that he relied on their statements against his own observations.

The complainant charges that the defendants represented the company to be solvent, and that its assets were in excess of its liabilities, taking capital stock to be a liability. The defendants deny that they ever made such a statement regarding the taking capital stock to be a liability. The weight of the evidence supports their denial. They say the company was solvent, that they believe its assets were in value in excess of its liabilities. The complainant, before bringing this suit, had filed a bill to have the company declared insolvent, but failed in his effort. It was shown at the hearing that the company was still continuing its business in its usual manner.

Representations of solvency are in a considerable degree matters of belief, depending upon the opinion of the speaker as to the value of assets, and where the variance is not gross or unconscionable, a fraudulent purpose ought not to be imputed to such statements. Nor can fraud be established where no intent to deceive appears by showing differences in judgment in estimating values, and nice calculations by experts to demonstrate supposed conditions of insolvency.

The alleged fraudulent statements regarding the amount and value of bills receivable and payable, the receipts from sales, the

Garrison v. Technic Electrical Works.

expenditures, the collectible assets as compared with the liabilities, the truth of the balance sheet shown as an exhibition of the condition of the company, were all of them matters appearing on the books and papers of the company, which the defendants submitted to the complainant without reserve, and which were inspected and examined by the complainant to his own satisfaction. It is from these same books and papers that it is now sought to show a variance from alleged verbal representations. So as to the character and condition of the stock on hand, and the business in the shops, the complainant saw and examined these for himself, in his own way, and at his own choice, for the very purpose of satisfying himself as to his intended purchase. Nothing was denied him. The defendants did nothing to hinder or mislead him in making his own examination. No charge of any such conduct is made.

There was a written memorandum given by the defendants to the complainant at the time he made his purchase. This memorandum is dated March 2d, 1896. It distinctly recognizes the fact that the company was carrying a debt for which it was desirable that special provision should be made. It secured to the complainant an option to buy additional shares, indicating an expectation that the future business of the company would make its shares desirable. It further pledged the word of the defendants that the assets, liabilities, &c., stated in the trial balance of February 1st, 1896, submitted to the complainant, and all their verbal statements as to the solvency, credit and condition of the company were true to the best of their knowledge.

At the hearing and in argument it was urgently insisted that if it were shown that there was in fact any variance from the trial-balance sheet of February 1st, then fraud was conclusively established. This contention is based upon an assumption that the memorandum was a warranty and that the penalty for any variance is a rescission of the contract. This is not the issue upon which the complainant asks relief in this court. The allegation is that the sale was induced by the fraudulent misrepresentations of the defendants. If it appears that the balance sheet was made in good faith and exhibited the condition of the

company as the defendants believed it to be—that the variances were not so material as to suggest a fraudulent purpose, or were explained to the complainant at the time, or were matters of opinion and judgment as to values, or of expectation as to future profits—the element of fraud is eliminated, even if there be variance in fact.

There was an item of $2,716.65 of loss (sometimes referred to as $2,716.59) which had been carried through the company's trial balances since November, 1895. It also appeared on the trial-balance sheet of February 1st, 1896, shown to the complainant and on which he bought the stock. This item was afterwards, on February 29th, 1896, distributed to accounts showing assets, and the distribution operated to swell the apparent values. The complainant insists that these distributive entries of this item were fraudulently made for the purpose of increasing the book assets of the company. Mr. Garrison testifies that he never knew of these correcting entries until after he had purchased. These entries, therefore, never induced him to buy the stock. He bought, he says, on the trial balance of February 1st, 1896. On that trial balance this item of $2,716.65 appeared as a loss unfavorable to the company, and therefore deterring from and not inviting to the purchase of the stock. It cannot be said that an exhibition of an entry showing a loss to the company and thereby lessening the value of its stock could have been an inducement to its purchase. The change by which this item was distributed to capital account operated to increase the apparent assets of the company. But the intent of the parties in making these corrective entries is fairly shown to have been free from fraudulent purpose by the explanation which the defendants testify they gave to the complainant—that the entry of this item of $2,716.65 as a loss or current expenditure was an error which came from a mistake in Sinclair's method of bookkeeping, in charging so much money to labor and material which had in fact been expended in permanent improvement of the plant. They say this matter was explained to the complainant before he purchased, and he was told that corrective entries would be made whereby this item

would be divided and charged in its proper place, to the several divisions of capital account, and that he made no objection. This was afterwards done, and this change in this item is now recited as an indication of a fraudulent concealment. The complainant's statement is fairly met in this, as in other charges, by the defendants' contradiction, and it cannot be said that the weight of the evidence sustains the complainant's claim that the transaction regarding this item was a fraud.

The principle upon which sales will be rescinded because of frauds of the character alleged in this cause, necessarily requires that the statements made must have been false as to some matter of enough significance to have affected the vendee's judgment in making the purchase. Several of the matters alleged are trivial in character, and indicate a purpose on the part of the complainant to find and exploit a cause of grievance, rather than the statement of a matter which the complainant relied upon as an inducement to the purchase and in which he found he had been deceived.

The element of fraudulent intent on the part of the vendor in making the supposed false statement must also appear, for if all the circumstances rebut the existence of a purpose to mislead and deceive the vendee, it cannot be said that he was defrauded. The conduct of the defendants indicated no fraudulent purpose. They did not invite the complainant to buy. He volunteered his wish to go into the company. They were in no haste to close the negotiation for the sale. It was several weeks under consideration. They gave abundant opportunity to see books, papers, stock and plant; they took payment partly in a due-bill which was not negotiable paper, and left available any defence setting up the supposed fraudulent purchase. The defendants appear to have made no statements substantially variant from the truth.

The vendee, to justify rescission for fraud, must also be shown to have relied on the false statements made to him by the vendor, and to have been thus induced to make the purchase, for otherwise he has no ground of complaint. This element is negatived when it appears that the alleged misrepresentations if made were

Garrison v. Technic Electrical Works.

so trivial that they cannot be believed to have induced the purchase. When it is shown that the purchaser, a competent person, had himself made personal and unrestricted investigation for the purpose of informing himself as to the condition of the subject-matter of the sale, it is difficult to accept his statement that he relied upon the vendor's representations rather than upon his own observations. But if there be a showing by the weight of the evidence that the vendor made a statement of a material fact, knowing it to be false, or, at least, not knowing it to be true, which the vendee had a right to believe and rely upon, it would shift the burden of proof to the vendor, and oblige him to show that the false statement did not influence the vendee to make the purchase, and that he relied exclusively upon his own investigation and not on the proven false statement of the vendor. In this case there is no such showing of the alleged misrepresentations.

The testimony of the complainant and of the defendants was, as to most of the alleged misrepresentations, in direct denial and contradiction. The defendants refute other alleged fraudulent statements magnifying the financial capacity of the company, by showing that corresponding explanations were made to the complainant which fully advised him of the actual condition of the company's affairs. If the contract is to be rescinded, the testimony of the complainant must be accepted as controlling, and that of the two defendants rejected as unworthy of belief. The evidence given as to the alleged misrepresentations and the complainant's acceptance and reliance upon them, by other witnesses than the parties themselves, is of very little assistance.

No reason appears which indicates that the complainant's testimony is any more worthy of credence than the defendants'. If the statements of either side were more acceptable than those of the other, they rather appeared to be those given by the defendants. The complainant, while on the stand, manifested a disposition to minimize his own capacity to perceive facts which were obviously within his notice, when testifying as to his examination of the business of the company, previous to his purchase. He was also disposed to exaggerate matters of but

little importance in the dealings regarding the sale, into inducing causes for the purchase. The defendants, when testifying, as when bargaining with the complainant, appeared frankly to expose the facts as they understood them, whether they were advantageous or disadvantageous.

The weight of the evidence fairly indicates that the dealings between the parties were not carried on upon the understanding that the business of the company was, at the time of the sale of the stock, immediately and largely profitable. The sum of the proof is that the defendants' representations to the complainant fairly indicated that the company had within its scope possibilities which, with the advantages to be derived from the completion of the proposed changes, and the increase of capital by the accession of the complainant's purchase-money, could be developed into a profitable trade.

Upon the whole case the complainant has failed to prove that he was deceived by false representations of the defendants, and thus induced to purchase the stock of the company. The complainant's bill should be dismissed, with costs.