JOSEPH J. BURNS & ·another *vs.* GEORGE LANE.

Essex.   Nov. 5, 1884. — Jan. 10, 1885.   FIELD & C. ALLEN, JJ., absent.

In an action against an officer for the conversion of certain fish traps, with a count
for deceit, the defendant's bill of exceptions stated that the defendant, by virtue
of a writ against the present plaintiffs, attached certain personal property of
theirs on a certain wharf, but did not attach the traps in question; that, at this
time, the plaintiffs had spread upon a field, at some distance from the wharf,
the traps in question, for the purpose of drying them; that the defendant told
the plaintiffs that all their personal property was attached, and the plaintiffs
requested the defendant to store the traps, as they were perishable; that the
defendant told the plaintiffs that if they meddled with the traps it would be at
their peril; and that the traps were not taken care of, and were destroyed by
the action of the weather.   The bill of exceptions further set forth that one of
the plaintiffs lived near the field where the traps were, and saw them a number
of times; and that a son of the other plaintiff, who was in his employ, saw the
traps nearly every day, and talked with his father about them; and that none
of them saw the defendant or any one as keeper of the traps on the field, or
in possession of them.   *Held*, that, if the officer told the plaintiffs that he had
attached the traps, with the intention that they should believe and act upon
such statement, this was a representation of fact; and that, if they, in the ex-
ercise of reasonable care, believed the statement, and, because of that belief,
refrained from taking care of the traps, so that they perished, the action could
be maintained.

TORT, against a deputy sheriff, for the conversion of eight
fish traps, and other personal property; with counts for official
neglect and for deceit.   Trial in the Superior Court, before
*Blodgett*, J., who allowed a bill of exceptions, in substance as
follows:

There was evidence that the defendant was a deputy of the
sheriff of Essex; that he had a writ in his hands issuing out of
and returnable to the Supreme Judicial Court for said county,
in due form of law, in which Julius W. Rosenstein and others
were plaintiffs, and the plaintiffs in this case were defendants,
by which he was required to attach the goods and estate of the
defendants in that case to the amount of $20,000; that on No-
vember 8, 1881, he attached certain personal property by virtue
of said writ in certain buildings on what was called "Fort
Wharf" in Gloucester; and that said writ was duly returned
to and entered in said court.

The plaintiffs' evidence tended to show that on said Novem-
ber 8 they had spread upon a field, called "Stage Fort Field,"
eight fish traps, for the purpose of drying them, they having

been recently brought in for the season ; that this field was distant from Fort Wharf about two thirds of a mile, and was not visible from it ; that these traps had been used one season, and consisted of twine netting and fittings of floats, sinkers, and ropes, and were liable to be destroyed by being frozen to the ground with ice and snow in the winter ; that on said day the defendant told the plaintiffs that all of their personal property was attached, and thereupon the plaintiffs said to him that he should take care of those traps on the field, that they had a barn at Magnolia in which he could store them, and that the defendant said to them in reply that all of their property real and personal, including the barn at Magnolia and the fish traps, was attached, and if the plaintiffs meddled with them it would be at their peril ; that on two occasions, within a few days after this, the plaintiffs asked the defendant to care for the traps, and told him they were of great value and of a perishable nature, and that they should be put under cover, and offered to do it themselves, and, on several occasions during the month, and before the traps were fully destroyed, the plaintiffs made the same statement and request to the defendant, to which the defendant replied, each time, that the traps were attached and all of the plaintiffs' property, real and personal, was attached, and that they would touch them at their peril ; that these traps were destroyed by the ordinary effects of the weather, while lying on the field ; that the plaintiffs, relying upon the statements of the defendant, and believing the traps to be attached by him, did nothing to them for that reason only.

These conversations all took place on Fort Wharf, or at other places in Gloucester as remote as that was from the field where the traps were spread, and none of them within sight of it.

The defendant, in testifying as a witness, denied that he made the statements attributed to him as to the fish traps, or that he knew anything of them or their existence ; and there was no evidence, other than the declarations of the plaintiffs as before stated, that he ever saw them, or took possession of them, or had any keeper over them, or did anything to them or about them in the nature of making an attachment of them, and they were not mentioned in his return upon the writ against these plaintiffs.

The plaintiffs testified that Burns, one of the plaintiffs, resided within sight of the field where the traps were spread, and saw them a number of times; that a son and employee of the plaintiff Tarr crossed the same field almost every day, and frequently talked with his father about the traps; and that none of them ever saw the defendant or any one as keeper of the traps on the field, or in possession of them.

The defendant requested the judge to give the following instructions: "1. The plaintiffs are not entitled to recover anything of the defendant in this action for any loss or injury to the eight fish traps claimed by the plaintiffs to be on the lot called 'Stage Fort Field.' 2. Mere words will not constitute an attachment. Without an attachment, there was no obligation on the part of the defendant in relation to the property. 3. This is not a case where an action for deceit lies, for deceit can add nothing to, or take anything from, the rights of either party. The defendant is just as responsible for taking possession and not perfecting his title as he can possibly be made to be, and whether he had attached the property or not is a question of law, and as well within the knowledge of the plaintiffs as of the defendant. To say that he attached, when the facts under the law make no attachment, cannot be said to deceive, for an action for deceit will not lie for a misrepresentation as to law. 4. It is not enough to show that the plaintiffs were deceived by the statement of the defendant, but it must be shown as matter of fact that the defendant intended to deceive them. 5. The plaintiffs are not entitled to recover for any loss of or injury to the eight fish traps, if the defendant did not in fact take possession of or intermeddle with them. 6. The estoppel cannot operate in the action for deceit to prove an attachment. If an attachment is not proved, then no consequences that follow an attachment can follow. 7. If the plaintiffs, by the exercise of common and ordinary care, would have discovered that there was no attachment, then the neglect to discover it and take care of the property was contributory negligence on their part, and will prevent them from recovering in this case. 8. The fish traps being all of the time in the possession of the plaintiffs upon their premises, upon land over which the defendant had no control, and did not attempt to exercise any control, the

plaintiffs cannot justify their negligence and carelessness in regard to the property, and charge the defendant with the result of the same. Such conduct must at least be contributory negligence on the part of the plaintiffs, and prevent them from recovering. 9. The defendant could not make an attachment of the fish traps without actually reducing them to possession, and as they were in the possession of the plaintiffs, and that possession was not in fact disturbed by the defendant, the plaintiffs must be presumed to know that the property was not attached, and the defendant is not estopped by his alleged declarations to them, if they were made, that they were attached. 10. If the defendant is answerable as sheriff for want of care as sheriff, he is only bound to exercise reasonable care, and if, when exercising reasonable care, the property is injured or stolen, he is not answerable for its loss or injury. 11. If the defendant attached the property and failed to continue his attachment, or lost it by his own neglect, he became a trespasser *ab initio ;* and, if answerable at all, is answerable in trover ; and the plaintiffs cannot say that he had any obligation with reference to the property after the time of his attachment. By such conduct the defendant loses his official character in relation to the property, and thereby becomes an unofficial person, and is answerable for his acts as such, and not otherwise. His original official character cannot in any way affect his liability. It cannot make his acts more or less than conversion of the property, and mere words cannot constitute a conversion. The plaintiffs can only waive some right of their own ; they cannot by any waiver affect unfavorably the rights of the defendant."

The judge gave, in substance, the fourth instruction requested ; declined to give the others ; and, in addition to instructions which were not objected to, instructed the jury that, in order to make a valid attachment of the fish traps, the defendant must have taken them into his actual possession and control; that if he attached the fish traps, he was bound to take reasonable care of them, and that reasonable care would be such care as a man of ordinary prudence would use, if the property had been committed to him to keep for hire; that if the defendant, being a deputy sheriff and having a writ in his hands against the plaintiffs, by virtue of which he was authorized to attach the plaintiff's

property, said to the plaintiffs that he had attached the fish traps, and make that statement with the intention that the plaintiffs should believe it, and act upon it, and if the plaintiffs, in the exercise of reasonable care, did believe it, and act upon it, and because of that belief refrained from taking care of the fish traps, and the fish traps were lost or injured from want of proper care, the defendant would be liable to the plaintiffs in this action for such loss or injury, although in fact the fish traps were not attached by the defendant.

The jury returned a verdict for the plaintiffs for $3298.07; and the defendant alleged exceptions.

*C. P. Thompson & W. F. Slocum*, for the defendant. 1. To constitute an attachment of goods, the officer must have the actual possession and custody of them. *Lane* v. *Jackson*, 5 Mass. 157. *Heard* v. *Fairbanks*, 5 Met. 111.

2. The plaintiffs knew that the defendant had not taken possession of the traps, and they could, by the exercise of ordinary care, have ascertained all the facts. *Brown* v. *Leach*, 107 Mass. 364, 368. *Slaughter* v. *Gerson*, 13 Wall. 379.

3. If the plaintiffs ever believed that the traps were attached, they were immediately informed that such was not the case by the fact that the traps remained in their possession undisturbed. *Loker* v. *Damon*, 17 Pick. 284, 288.

*W. S. Knox & C. U. Bell*, (*E. J. Sherman* with them,) for the plaintiffs.

HOLMES, J. If the representation that the plaintiffs' fish traps were attached had been a statement of the effect of certain facts mutually understood to be known to both parties, as, for instance, that they were attached, although they could be immediately removed, and yet no possession had been taken of them, the representation would then have been a representation of law, and the question would have arisen which has been argued for the defendant, whether an action will lie for a false representation of law. On that question we express no opinion. Compare *Hirschfield* v. *London, Brighton, & South Coast Railway*, 2 Q. B. D. 1, and *Upton* v. *Tribilcock*, 91 U. S. 45. But a simple representation that goods are attached, without more, such as the plaintiffs testified to, is a representation that facts exist which justify the statement.

The plaintiffs testified that one of them lived within sight of the field where the traps were spread, and saw them a number of times; that a son and employee of the other crossed the field where they were almost every day, and frequently talked with his father about the traps; and that none of them ever saw any one in possession of the traps as keeper. But this evidence does not necessarily cut down the effect of the defendant's representation to misleading the plaintiffs on a point of law. For it is technically consistent with their having believed that the defendant had possession of the traps. It does not appear what the son told his father on this point, or who was the owner of the field, or what his relations were to the parties, or whether there were not houses so near that the nets could be watched from them, or that the plaintiffs may not have believed that the defendant, if he did not watch the nets continuously, at least kept charge of them as against the plaintiffs by appearing from time to time. See *Bond* v. *Padelford*, 13 Mass. 394. *Conn* v. *Caldwell*, 1 Gilman, 531.

All these possibilities are open on the bill of exceptions; and as, under the instructions of the court, the jury could not have found for the plaintiffs on the count in deceit, unless they found that the plaintiffs were in the exercise of due care in believing the defendant's statement, we cannot indulge in conjectures on the strength of seeming improbabilities, in the hope of doing substantial justice. The representations were alleged to have been repeated through the whole time that the traps were being destroyed; and the instructions of the court and the finding of the jury must be taken to extend to the plaintiffs' belief during the same period. Moreover, if the plaintiffs justifiably believed that the defendant had attached and taken charge of the traps on the faith of his representation to that effect, they were not bound to verify the fact, or to see whether the attachment had not been abandoned. They had a right to rely on the representation, and on the continuance of the attachment, so long as they did so in good faith. The cases cited for the defendant are cases of representations concerning the manifest quality of goods offered for sale and presented for inspection, where the buyer had no right to rely on the representation at all unless he required a warranty. *Brown* v. *Leach*,

107 Mass. 364, 368, and cases cited.  See *Savage* v. *Stevens*, 126 Mass. 207.   The standard of good faith required in sales is somewhat low, not only out of allowance for the weakness of human nature, but because it is not desirable to interfere too much for the purpose of helping men in their voluntary transactions more than they help themselves, and because, if they deem the representation essential, they can make it so by requiring a warranty.   But it would be going too far to say that a party to an involuntary relation believes at his peril a representation made for the avowed purpose that he should act upon it, merely because its truth, or more strictly its continuing to be true, may depend upon visible facts, and because, if he knows the law, as he is presumed to do, he can go to the spot and verify those facts for himself.   *Brown* v. *Castles*, 11 Cush. 348.   *David* v. *Park*, 103 Mass. 501.

It was suggested, rather than pressed, that as the traps, if not attached, were in the possession of the plaintiffs, they must be taken to have known whether they were or not.   But a man may retain or lose possession without knowing it, and the question whether he has done either may therefore be made the subject of a fraudulent representation.

The foregoing considerations dispose of the argument which has been pressed upon us, and we think are sufficient to dispose of the exceptions, with the further remark, that the evidence of the defendant's statements which warranted the jury in finding him guilty of deceit also warranted a finding that he did attach in fact, and was liable on the other counts, if the jury believed that the statements were not only made, but were true.

If there is any ground for the suggestion made by the defendant for a different purpose, that the traps could not be immediately removed, (Pub. Sts. *c.* 161, § 69,) there was less difficulty in believing that they had been attached originally, even if the attachment was abandoned after the traps were spoiled.   And if the plaintiffs believed the same thing, although wrongly, it was a further excuse for believing that the traps were attached, even when they saw no one in charge of them.   But we do not rely on this consideration.                     *Exceptions overruled.*