WALTER C. TOWNSEND vs. SULLIVAN NILES.

SULLIVAN NILES vs. WALTER C. TOWNSEND & others.

Middlesex. November 17, 20, 1911. — January 3, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Practice, Civil,* Question for jury, Judge's charge, Exceptions. *Deceit. Sale. Damages,* Recoupment.

In an action to recover damages for an alleged false and fraudulent representation of the defendant, whereby it was alleged that the plaintiff was induced to buy a share in a provision business carried on by the defendant and another, it appeared that the defendant made the statement alleged to be fraudulent, but upon the question whether the defendant's representation or other considerations induced the plaintiff to purchase the share in the business the testimony of the plaintiff warranted a finding either way. The defendant alleged exceptions to a refusal of the presiding judge to rule that on all the evidence the plaintiff was not entitled to recover. No question was raised as to the judge's charge and it was not reported in the bill of exceptions. *Held,* that the question of fact upon the conflicting evidence properly was left to the jury and must be taken to have been submitted to them with full and correct instructions.

In an action to recover damages for an alleged false and fraudulent representation of the defendant, that the defendant and his partner, who carried on a retail and wholesale pork business in a stall in a general market and a storehouse on another street, were doing a business of $150,000 a year, whereby it was alleged

that the plaintiff was induced to buy a share in the business, it cannot be said as matter of law that the fullest examination of a stall in a market or of other premises in which such a business at wholesale or retail was carried on would make manifest the truth or falsity of a representation as to the amount of business which was being done there, and, if it appears that the plaintiff was given a full opportunity to examine the stall and the warehouse and did examine them, this does not prevent his going to the jury on the question whether he was induced to buy the share in the business by the defendant's false and fraudulent statement.

The rule of *Poland* v. *Brownell*, 131 Mass. 138, that where goods are fully examined by a buyer he cannot hold the seller liable for "mere seller's statements," is not to be extended.

Two cases were tried together. The first was an action to recover damages for an alleged false and fraudulent representation of the defendant as to the profits of a business carried on by the defendant, whereby the plaintiff was induced to buy a share in the business. The second action was brought by the defendant in the first case against the plaintiff in that case on a promissory note given in part payment for the share in the business, and the only defense relied upon was that the making of the note was induced by the false and fraudulent representation as to the profits of the business which was alleged in the first case. There was evidence of a false and fraudulent representation made by the defendant in the first case which induced the plaintiff in that case to buy the share of the business in question. The jury in the first case returned a verdict for the plaintiff in the sum of $4,500. The jury in the second case returned a verdict for the plaintiff in that case in the sum of about $3,500. The defendant in the second case alleged exceptions to the admission in the second case of certain evidence upon the issue of the alleged false and fraudulent representation of the plaintiff set up in the defendant's answer. *Held*, that the defense of deceit, having been declared upon and recovered for in the first case, the damage to the defendant in the second case was made good by his recovery in the first case, and that he was entitled to no recoupment to be deducted from the amount of his note on account of a wrong for which he had been compensated in full, so that, even if the evidence was admitted improperly, the defendant in the second case could not be aggrieved by the error and would have no right of exception. It was not suggested that the effect of the evidence might have been to reduce the amount of the verdict in the first case, and no exception to its admission in that case was alleged.

TORT for alleged deceit in falsely and fraudulently representing to the plaintiff that the firm in which the defendant was a partner, who were engaged in a provision business, were doing a business of $150,000 annually, whereby the plaintiff was induced to purchase a one third interest in such business. Writ dated April 9, 1908; and

CONTRACT, by the defendant in the first case against the plaintiff in that case, on two promissory notes respectively for $2,000 and $1,000, the respective indorsers of the notes also being made defendants. Writ dated March 2, 1908.

The answers in the second case set up that the principal defendant in that case was induced to make the notes sued upon by the same false and fraudulent representation alleged in the declaration in the first case, the notes having been given in renewal of notes given in part payment for the one third interest in the provision business purchased by the principal defendant.

In the Superior Court the cases were tried together before *Fox*, J. The following facts, among others, appeared in evidence.

The defendant in the first case, hereinafter called the defendant, and one Onthank, in March, 1906, were partners doing a retail and wholesale business in pork products in New Faneuil Hall Market in Boston under the firm name of Niles and Onthank. The defendant had been in the same business at the same stall in the market since 1863, first under his own name, later as a member of the firm of Niles Brothers, and still later under the firm name of Niles and Onthank. Early in 1906, the defendant being an elderly man, and his partner Onthank being sick, they sold a third interest in the business to the plaintiff in the first case, hereinafter called the plaintiff, under a plan of reorganization substantially as follows:

On February 12, 1906, the plaintiff, the defendant and Onthank agreed to form a corporation under the laws of Massachusetts, bearing the name of Niles and Onthank Provision Company, with a capital stock of $24,000, to be paid for in cash.

" Pursuant to this agreement, on March 5, 1906, each of the parties named paid to the corporation $8,000, and received in return therefor one third of the stock of the corporation, and the plaintiff began actively to participate in the conduct of the business. On March 10, 1906, the corporation paid the firm of Niles and Onthank $10,000 for the stalls and the good will of the business, and also paid the firm the fair market value of its stock of goods on hand. On June 28, 1906, the corporation, having more money in the bank than it needed in the business, paid to each of the stockholders $2,000 and correspondingly reduced its authorized capital. On July 8, 1906, Onthank died. On October 23, 1906, the plaintiff, being the owner of one third of the authorized capital stock, bought out the other two stockholders, namely, the defendant Niles and the estate of Onthank, paying to each the sum of $42,000. On the same date, the defendant,

in behalf of the firm of Niles and Onthank, paid back into the treasury of the corporation $1,228.28, representing a rebate of $1,000 on the stalls and other items, thereby reducing the amount for which the stalls and good will were actually put into the corporation to $9,000. The plaintiff then being the owner of all, or substantially all, of the outstanding stock of the corporation, the business continued until January, 1908, at a loss. On that date a creditor attached the property of the corporation and it was sold on mesne process. On April 9, 1908, this action was brought."

The plaintiff testified that he was forty-nine years old and had been in the grocery business in East Boston since 1880, about twenty-nine years altogether, twenty-three years continuously; "that he had no connection with Faneuil Hall Market until 1906; that in February, 1906, Niles and Onthank called him to see them and to consider going into business; that he met Niles in the office of one McKay, the superintendent of the markets; that the plaintiff, Onthank and Niles were present; that they asked him if he wanted to buy the business at Faneuil Hall Market and 100 Fulton Street, and, after talking a little with them, he went up to the market with them and refused them; that it did not look as though he wanted the business; that from the meeting place in superintendent McKay's office, in the Old Quincy Market building, they went up to the stall and there had a little talk; Onthank went into the office and Niles was out by the marble counter. The plaintiff questioned him there and asked him how much business they were doing yearly. 'Why,' he says, 'we are doing full $150,000;' that the plaintiff did not talk much more; that it did not appear like it at all to him, and that is why he refused to buy the business; that a price of $10,000 at that time was put just upon the stall, just the stall, no stock mentioned, the bonus as it is called; that the firm had two places of business, a stall and a half in the New Faneuil Hall Market and a storehouse at 100 Fulton Street; that he did not at that time inspect the storehouse; that they sent for him a second time through superintendent McKay, and he met them at the same place and they went up into Faneuil Hall and talked the matter over; that they asked him if he wanted to go into the business, and he told them that it was no

use, that he did not care for the business; that the defendant said they were doing a good business; that Onthank was sick and a little run down from overwork and he was going out to take care of the wholesale business, as he had for so many years; and that he, the plaintiff, should stay there and improve the stock, that is, in forming a stock company; that they told him what a prosperous business it was on that second interview; that the defendant said the plaintiff would have a prosperous business and that they had made so much money there; that at the time of the second meeting the plaintiff had gone down to Fulton Street to see what was in there; that it was just a store, and one of the worst looking places he ever saw for a store; that the plaintiff refused them, but they asked him to meet them again, and he met them a third time at the directors' room of the Fruit and Produce Exchange; that then a scheme was produced for a stock company; that they tried to impress upon the plaintiff that if he would buy the business, Onthank would stay there and work with him, but he told them it was useless and he could not think of it; that they had it all figured up what to do and form a stock company and have the plaintiff a third owner, and the capital stock of $24,000."

The plaintiff further testified as follows: " Q. And whether or not figures were mentioned at that meeting? A. Yes, sir, the second meeting, yes, sir, that was talked over — $150,000, a prosperous business I should have, I go right into the business, money-making business. . . . I asked the question, I says, ' What do you want of $24,000 capital stock; and carrying no more stock than you are carrying?' . . . — Q. And that was before Mr. Niles? A. That was before Mr. Niles. — Q. What did he say? A. Mr. Onthank answered me: Mr. Niles didn't. Mr. Onthank answered me, ' Why we have got to have $24,000 capital stock to do $150,000 business.' "

On his cross-examination the plaintiff, among other things, testified as follows:

" Q. Now, then, the representations were made at the first time you saw them; it was the first time you saw Mr. Niles, you say, that he told you they were doing $150,000 worth of business? A. That isn't the only time. — Q. No, but he told you that the first time, and although he told you that you didn't want any

part of it then, is that so? A. Yes, I didn't want it. — Q. Now, then, why was it you changed your mind and decided to take a third of it? A. Because they drew up the plan of a corporation and they were going to work along with me. I hadn't got to go in there and shoulder it alone; they were going to work along with me. Mr. Niles was going to do everything in his power to help me, to help the business along; and Onthank was going out immediately, just as soon as he fixed up the corporation affairs. . . . The plaintiff further testified that he took the words of the defendants as to the good will of the business."

In the first case at the close of the evidence the defendant asked the judge to rule that upon all the evidence the plaintiff was not entitled to recover.

The defendant also asked the judge to rule as follows: "Even if the jury shall find that the defendant told the plaintiff that the firm were doing $150,000 worth of business per year, and they also find that the defendant gave the plaintiff full opportunity to observe for himself what was being done, the plaintiff cannot recover."

The judge refused to make either of these rulings.

In the first case, the action of tort for deceit brought by Townsend against Niles, the jury returned a verdict for the plaintiff in the sum of $4,500; and the defendant alleged exceptions.

In the second case, the action of contract on two promissory notes brought by Niles against Townsend and the indorsers, the jury returned a verdict for the plaintiff in the sum of $3,445.85; and the defendants alleged exceptions, relating to the admission of certain evidence allowed to be introduced by the plaintiff Niles in regard to the fair value of the stall and good will of Niles and Onthank at the time of the purchase by Townsend.

*H. H. Bond,* for Townsend.

*L. G. Brooks,* for Niles.

SHELDON, J. These cross-actions grew out of the same occurrences and were tried together. Exceptions were alleged in each. It will be convenient however to consider them separately.

In the first named action Townsend seeks to recover damages for a fraudulent representation alleged to have been made to

him by Niles in the sale of a share in a provision business which had been carried on by Niles and one Onthank in Boston. The fraudulent representation alleged in the declaration and found to have been made was that Niles and Onthank were doing a business of $150,000 annually. The questions now presented arise upon the refusal of the judge to rule as requested by the defendant that upon all the evidence the plaintiff was not entitled to recover, and that if the jury should find that the defendant told the plaintiff that the firm was doing a business of $150,000 a year and also found that the defendant gave the plaintiff full opportunity to observe for himself what was being done, the plaintiff could not recover.

1. The defendant claims that the real inducement by which the plaintiff was persuaded to make his purchase was not the fraudulent representation, but the assurance that a corporation would be formed and that the defendent and Onthank would assist in forming it and in the corporation affairs, and that this assurance was merely a promise and not the false statement of an existing fact. Some of the plaintiff's testimony undoubtedly tended to support this contention as to what was the real inducement upon which the plaintiff acted, but upon the whole evidence we think it plain that the question was for the jury. Nothing said in the charge was excepted to, and it is not reported. We must therefore take it that the question was submitted to the jury with full and correct instructions.

2. The defendant contends also that the case here presented is like that of one purchasing goods which he is given full opportunity to examine and of which the condition is obvious upon examination. *Salem India Rubber Co.* v. *Adams*, 23 Pick. 256. *Manning* v. *Albee*, 11 Allen, 520, 522. *Brown* v. *Leach*, 107 Mass. 364. *Burns* v. *Lane*, 138 Mass. 350. *Deming* v. *Darling*, 148 Mass. 504, 505. But here again the question was for the jury. We cannot say as matter of law that the fullest examination of a stall in a market or of other premises in which the business of dealing in provisions at wholesale or retail is carried on would make manifest the truth or falsity of a representation as to the amount of business which is being done there. And under the circumstances of this case the same principle applies to the advice of third persons or to the examination of books so

far as this was or might have been made.   See *Lewis* v. *Jewell*,
151 Mass. 345, 347 ; *Holst* v. *Stewart*, 161 Mass. 516 ; *Whiting* v.
*Price*, 172 Mass. 240 ; *Arnold* v. *Teel*, 182 Mass. 1 ; *Long* v.
*Athol*, 196 Mass. 497, 504 ; *Rollins* v. *Quimby*, 200 Mass. 162 ;
*Thomson* v. *Pentecost*, 206 Mass. 505.

3.  It cannot be said that the evidence taken together dis-
closes such a failure on the part of the plaintiff to use reasonable
care for his own protection as to preclude his recovery under
the rule of *Poland* v. *Brownell*, 131 Mass. 138.   The doctrine of
that case is not to be extended.   " It relates merely to seller's
talk."   *Light* v. *Jacobs*, 183 Mass. 206, 210.

In the second case, an action upon promissory notes given by
Townsend to Niles, the only defense set up was the same deceit
which was declared upon and recovered for in the other action.
In that action Townsend recovered a verdict for $4,500.   The
damage done to him is wholly made good by that recovery ; he
is placed in the same position as if the representation had been
true ; and he can have nothing more recouped from his note on
account of a wrong for which he thus has been already fully
compensated.   It follows that, even if there were any error in
the rulings or in the admission of evidence in this action, he
would not be aggrieved by it, and so would have now no right
of exception.

It does not appear and has not been suggested that the effect
of this evidence may have been to reduce the amount of the
verdict in the other case, and so have operated injuriously to
Townsend.   If he had apprehended this, his remedy would have
been by alleging exceptions in that case, and then the question
would have been open.   He has not chosen to do this, apparently
being satisfied with the amount which was awarded to him.   He
cannot have a double relief for the one wrong which was done
to him.

In each case the order must be

*Exceptions overruled.*