LELAND v. WESCOTT.

(District Court, D. Maine, N. D. August 30, 1919.)

No. 13.

1. ADMIRALTY ⬅47—ATTACHMENT—WHAT CONSTITUTES.
   Where a deputy sheriff did not go aboard a vessel and exercised no dominion over her, there was no attachment of the vessel.

2. OFFICERS ⬅116—LIABILITY—MINISTERIAL ACTS. ·
   An aggrieved person has a common-law right of action against an officer violating a ministerial duty.

3. ADMIRALTY ⬅47—WRONGFUL ATTACHMENT—BURDEN OF PROOF.
   One suing a sheriff for wrongful attachment of a vessel has the burden of proof.

4. ADMIRALTY ⬅47—WRONGFUL ATTACHMENT—SUFFICIENCY OF EVIDENCE.
   Evidence that defendant sheriff did not seize or exercise dominion over a schooner and made no attachment, etc., held insufficient to sustain a libel for wrongful attachment on the theory that the schooner's master was deceived into believing that it had been attached, and was therefore prevented from saving it from wreckage.

In Admiralty. Libel by Ralph G. Leland against Ward W. Wescott. Decree dismissing libel.

Nathan W. Thompson and George C. Wheeler, both of Portland, Me., for libelant.

Fellows & Fellows, of Bangor, Me., for libelee.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HALE, District Judge. In June, 1917, the two-masted schooner C. Taylor, 3d, was chartered to carry pulp wood from Trenton to Brewer. Having finished loading her cargo of 32 cords of pulp wood, on June 21st she started on her trip from Mt. Desert bridge, in Trenton. While proceeding in the fog she fetched up on a ledge at Job's Cove, Oak Point, in that town. The next morning Capt. Ralph G. Leland, her master and owner, with the aid of others, got most of the cargo ashore and saved it, thus lightening the schooner, in an effort to float her.

On the following day, Harland Murch, one of the seamen, after demanding his pay, brought suit for his wages, $43.83, against Capt. Leland. His writ was put in the hands of John Suminsby, a deputy of Ward W. Wescott, Esq., the sheriff of Hancock county.

While the schooner was still grounded upon the ledge, Suminsby appeared with his writ, and said to Capt. Leland that he had come to collect Murch's pay. Capt. Leland told the deputy that he could not pay him at that time, but that he would do so as soon as the vessel was in a safe place. The captain testifies that the deputy then told him that he had attached the schooner, and that he (Leland) must not touch it. The conversation between the parties took place on the shore, about 500 yards from the schooner lying upon the ledge. There is evidence tending to show that the schooner had laid upon the bottom, near Mt. Desert bridge, a part of the previous winter, and that she was not worth more than $100.

Capt. Leland brings this suit against Wescott, the sheriff, contending that Suminsby, the deputy, made an attachment of the schooner and prevented the captain and crew from saving her. He contends, further, that, whether Suminsby actually made the attachment or not, he led the libelant to believe that there was an attachment, and prevented him from taking such action as would have saved the schooner.

He says, also, that on the day the deputy attached her he could have floated her to a safe place, but that afterwards he was not able to float her for many days and until she had suffered great injury.

[1] Suminsby, the deputy sheriff, denies that he made the attachment, or that he ever said he made it. He says he made demand for the sum due Murch, and that, upon being refused payment by Capt. Leland, he said to him:

"If you don't settle I may have to attach the schooner."

Whereupon Capt. Leland said:

"You can't attach that vessel without going on board, and putting a keeper on board, and nailing a paper to the mast."

Capt. Leland denies that he said this. The deputy did not go aboard the vessel and never exercised any dominion over her. From the proofs, I must come to the conclusion that no attachment of the vessel was made. In Bradstreet v. Ingalls, 84 Me. 276, 24 Atl. 858, in speaking for the court of Maine, Chief Justice Peters said:

"To make an effective attachment of a vessel, or of any personal property, an officer must make an actual seizure." Nichols v. Patten, 18 Me. 231, 35 Am. Dec. 713.

[2, 3] But the libelant urges that, even if Suminsby did not attach the schooner, he led the captain to believe that he had attached her, and that her master would not be allowed to go near her without being in contempt of court, and that the deputy was thus guilty of an abuse of process for which the sheriff is liable.

The common law gives a right of action against an officer by any person aggrieved in consequence of a violation of a ministerial duty. The libelant relies upon Burns v. Lane, 138 Mass. 350, 355. In that case the officer was sued for the conversion of certain fishing traps, with a count for deceit. The exceptions showed that the defendant, by virtue of a writ against the plaintiffs, attached certain personal property of theirs on a certain wharf, but did not attach the traps in question; that, at this time, the plaintiffs had spread the traps upon a field at some distance from the wharf, for the purpose of drying them; that the defendant told the plaintiffs that all their personal property, including the traps, was attached, and that, if they meddled with the traps, it would be at their peril. The traps were not taken care of and were destroyed by the weather. One of the plaintiffs lived near the fields where the traps were and saw them several times. None of the plaintiffs saw the defendant, or any one for him, in possession of the traps. In speaking for the court of Massachusetts, Mr. Chief Justice Holmes said:

"If the plaintiffs * * * believed that the defendant had attached and taken charge of the traps on the faith of his representation to that effect, they were not bound to verify the fact, or to see whether the attachment had not been abandoned. * * * A man may retain or lose possession without knowing it, and the question whether he has done either may therefore be made the subject of a fraudulent representation."

[4] In that case the jury clearly found that the plaintiffs were wrongfully led to believe that the officer had attached and taken actual charge of the fishing traps. The case at bar discloses no such fact. It is clear from the testimony that Capt. Leland knew that the officer had not taken charge of the schooner; that he made no seizure; that he exercised no dominion over her; and that he made no attachment in fact. Capt. Leland denies that he told the officer that he could not attach without putting a keeper aboard; but, whether he said so or not, it is clear that he stood upon the shore with the officer, and knew that the officer never went to the vessel and never took any charge of her. It is in testimony, too, that, as soon as the deputy sheriff left him, Capt. Leland telephoned to competent counsel in Ellsworth, told him there was no keeper on the schooner, and asked him what he should do; and that his counsel told him by all means to take care of his schooner. He says that, at that time, the tides were running high and the vessel floated of her own accord, and that he could have saved her, had he not thought that she was under attachment. But the whole testimony leads me to the conclusion that he had no right to conclude that the vessel was under attachment, because he could see clearly that no attachment and no seizure had been made. The burden being upon the libelant, the proofs fail to show any attachment or seizure of the ves-

sel; or that Capt. Leland was actually deceived into believing that there had been such attachment or seizure.

The libel must be dismissed. A decree may be entered dismissing the libel. Under all the circumstances, it is ordered that the libelant recovers no costs.