Dᴀʏ and Kɪʀᴋᴘᴀᴛʀɪᴄᴋ, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

Aꜰꜰɪʀᴍᴇᴅ.

---

Jᴏʜɴ T. Jᴏɴᴇs ᴠ. W. E. Sᴛᴇᴡᴀʀᴛ.

Fɪʟᴇᴅ Jᴜɴᴇ 19, 1901. No. 9,880.

Commissioner's opinion, Department No. 1.

1. **Dealer Not Bound to Disclose Superior Knowledge.** Where persons are dealing with each other upon equal terms, and no confidential relation exists between them, neither is bound to disclose superior information he may have respecting the transaction.

2. **Poor Judgment No Basis for Relief in Equity.** Poor judgment, or unfortunate trades, in the absence of fraud or deception, form no basis for relief by the court.

3. **Conflicting Evidence.** The finding of a jury, upon questions properly submitted, when the evidence is fairly conflicting, will not be disturbed unless it appears to have been influenced by passion or prejudice.

4. **Admission of Evidence.** Certain rulings on the admission of evidence, presenting no new questions of law, examined and sustained.

ERROR from the district court of Lancaster county. Tried below before HALL, J. *Affirmed.* HOLCOMB, J., dissenting.

*Frederick Shepherd,* for plaintiff in error:

The active concealment of a material fact has the same effect as an express false representation. Larson, Contracts, 227.

In setting aside a transaction as fraudulent, inadequacy of price is a strong circumstance. That *suppressio veri* is equal to *suggestio falsi,* is a principle which will prevail. In the absence of a satisfactory reason, it is a badge of fraud. *Beard v. Campbell,* 2 A. K. Marshall [Ky.], *125.

*Addison S. Tibbets* and *Halleck F. Rose, contra:*

A purchaser is not obliged to disclose a fact to the vendor, which would enhance the value of the property. *Coddington v. Goddard,* 82 Mass., 436; *Hurt v. Wallace,* 49 S. W. Rep. [Tex.], 675.

DAY, C.

The facts in this case present a very singular transaction. On and prior to November 12, 1892, Willard E. Stewart was the owner of lots 7 and 8 of College Hill, an addition to the city of Lincoln, upon which was erected a seven-room dwelling-house. The premises were incumbered by a mortgage of $2,000, together with a small

amount of accumulated interest and taxes. On said day, and for several years prior thereto, the plaintiff, under the name of John T. Jones, treasurer, had on deposit and to his credit in the First National Bank of Lincoln, $2,609.35, and, incomprehensible as it may seem, this fact had entirely escaped his attention. The defendant discovering this fact, made a proposition to the plaintiff to deed him the property above mentioned, subject to the incumbrance, for an assignment of the plaintiff's interest in and to certain property, the nature and location of which the defendant declined to disclose. One of the conditions of the proposed trade was that the plaintiff should sign his name to the papers without seeing, reading or knowing the contents of the instruments he signed. After some modification of the proposition the parties came to an agreement, in pursuance of which the defendant, on November 12, 1892, executed and delivered a warranty deed conveying the premises above mentioned to a person named by the plaintiff for plaintiff's use, and also paid to the plaintiff $100 in cash. In consideration of this conveyance and the cash payment, the plaintiff, in pursuance of the agreement, signed two papers without reading them or seeing their contents, or knowing what they contained, except that they were to operate as an assignment of certain interests which he had, of the nature of which he was ignorant. At the time of the negotiation the plaintiff secured a written statement from the defendant that there was nothing contained in the papers which plaintiff signed which would subject him to criminal liability, or bring upon him public ignominy or disgrace. Protected by this simple assurance, he blindly entered into the contract and signed the instrument placed before him. One of the papers so signed was a check in favor of the defendant, on the First National Bank for $2,609.35, by means of which the defendant drew said sum from the bank and applied it to his own use. Plaintiff kept the real estate for about two years, at which time he sold it, realizing from the sale just sufficient to pay the mortgage lien upon it. In 1894, plaintiff discovered the

18

nature and extent of the property he had assigned to the defendant, and the full purport of the contract he had made dawned upon him. This action was brought in the district court of Lancaster county to recover of the defendant $2,609.35 and interest, and is in the nature of an action for deceit. As a basis for his claim, the plaintiff, in substance, alleges that he was induced to sign the check without reading it, or seeing its written, and printed contents, by the untruthful and fraudulent representations made to him by the defendant; that .defendant told him he wished to procure from plaintiff a power of attorney and an assignment; that it would not put the plaintiff in a worse condition or position, lose him any money or deprive him of any interest, but would be of great value to the defendant; that plaintiff, by oversight and error, forgot the fact of his deposit in the bank, and relying on the representations made by the defendant, and believing them to be true, signed his name twice, but that in doing so unknowingly signed the check on which the defendant drew said money from the bank. The answer denied any false or fraudulent representations whatever to induce him to sign the papers, and alleged that the plaintiff signed the check and papers voluntarily and knowingly and in accordance with the agreement entered into between the plaintiff and defendant. The trial resulted in a verdict and judgment in favor of the defendant, to review which the case is brought to this court on error.

Much as the court may feel disposed to condemn the selfish cunning manifested by defendant in this transaction, and to lament the artless confidence of plaintiff, yet the legal rights involved are governed by well established principles of the law, and by the law only must they be settled. The rule is well established that where persons are dealing with each other upon equal terms, and no confidential relation exists between them, neither is bound to disclose superior information he may have respecting the transaction, and, in the absence of fraud or deception to induce the contract, the courts can afford no relief. The law pre-

sumes every man capable of taking care of his own interests, and his poor judgment or unfortunate trades can not form a basis of interference by the court. To recover, it was necessary for plaintiff to prove that the representations were made; that they were false; that plaintiff believed the representations to be true and relied upon them; and that he was injured thereby. The question of fact as to whether defendant had made any false or fraudulent representations upon which plaintiff relied in entering into this transaction and signing the check and power of attorney was submitted to the jury under proper instructions, upon evidence which was slightly conflicting, and the finding of the jury is conclusive upon this court.

For the purpose of determining the amount of plaintiff's damage, in the event the jury should find there had been false representations made by defendant, upon which plaintiff relied in making the contract, testimony was introduced on both sides as to the value of the property at the date the trade was made. Plaintiff's witnesses, four in number, placed the value of the real estate at sums ranging from $2,500 to $2,700, while the defendant's witnesses, seven in number, placed it at from $4,000 to $5,000. There was ample evidence for the jury to find that the value of the property received by the plaintiff was equal to the value of the property he parted with. This question was also submitted to the jury under proper instructions, and being resolved by the jury in defendant's favor upon fairly conflicting evidence, their finding will not be disturbed. *Interstate Savings & Loan Ass'n v. Strine,* 59 Nebr., 27; *Van Housen v. Brochl,* 59 Nebr., 48. This rule has been announced so many times by this court that it is unnecessary to cite authorities to support it. Fourteen cases can be found in the index of volume 59, under the title of "Review."

Another error complained of by plaintiff was a ruling of the court excluding from the evidence a part of the defendant's answer, which had previously been stricken out, to the effect that the moneys standing to the credit of

plaintiff on the books of the bank "was connected and involved with the affairs and business of Doolittle & Co., of which firm the plaintiff was a member." Plaintiff's contention is that this part of the answer was admissible, notwithstanding it had been stricken out, for the purpose of showing admissions of defendant that the funds for which he desired the assignment grew out of matters relating to the business of Doolittle & Co., and that such admissions tended to corroborate the testimony of the plaintiff. The portion of plaintiff's testimony which it is claimed this part of the answer tended to support is where the plaintiff, in relating what defendant said to him, testified: "You know you are a bankrupt and this affair refers to matters you have forgotten and can be of no benefit to you; and besides I think you would do me a special favor before you would some of your old creditors of the firm of Doolittle & Co." This was denied by the defendant. In this connection the plaintiff testified that defendant "was very careful not to refer in any manner to the credit or property he wished to obtain," and that the defendant at the time did not represent that the property or thing he wanted had any connection with the affairs of Doolittle & Co. He argued that "I being a bankrupt, it would in no way harm me financially and at the same time do him a great kindness." To our minds, the portion of the answer previously stricken out, and which was excluded by the court, tended in no way to corroborate the plaintiff's testimony—in fact it was a contradiction of it. Neither was it competent to discredit the testimony of defendant; at most it was but an admission of defendant at variance with his testimony upon an immaterial point, and one upon which the testimony of both plaintiff and defendant agreed.

The defendant testified that he told the plaintiff that, in his opinion, the property he was deeding to him was of about equal value of the property he was getting from plaintiff. To discredit this, and to show defendant did not regard the properties of equal value, plaintiff sought to

show that defendant had paid $600 for the information which enabled him to make the trade. We can see no error in excluding the testimony; it was entirely immaterial what defendant may have paid for the information; he may have made a good or a bad bargain; it did not go to show that the value of the property was less than defendant claimed. It is a matter of common experience that persons ofttimes make great sacrifices of their property for the purpose of realizing therefrom ready cash.

All of the elements of fraud presented by the pleadings were fully and fairly submitted to the jury by the instructions, and after a careful investigation of the record, we can find no legal reason to disturb the judgment. It is therefore recommended that the judgment be affirmed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

AFFIRMED.

HOLCOMB, J., dissents.